U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2021 NOV -5 PM 2:07

CLERK

BY_____/s/_____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

UNITED STATES OF AMERICA )
)
v. ) Case No. 2:18-cr-00123
)
KRYSTAL WHITCOMB, )
SHAWN WHITCOMB, )
MICHAEL ANTHONY HAYES, )
JOHN WELCH, MICHAEL ASHFORD, )
and CHRIS EASTMAN )

**OPINION AND ORDER DENYING DEFENDANT WELCH'S
MOTIONS TO SUPPRESS**
(Docs. 287 & 514)

Pending before the court is Defendant John Welch's motion to suppress the evidence obtained pursuant to October 23, 2018 and November 21, 2018 search warrants for his cell phone records (the "cell phone warrants") and his motion to suppress the evidence obtained pursuant to an October 29, 2018 search warrant for certain Facebook records (the "Facebook warrant"). The government opposes both motions.

Defendant Welch is charged in a Fourth Superseding Indictment with knowingly using and carrying a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. §§ 924(j)(1) and 2 (Count 1);[1] knowingly using and carrying a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. §§ 924(c)(1)(A)(iii) and 2 (Count 2);[2] knowingly conspiring to use and carry a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(o) (Count 3); knowingly and willfully conspiring to distribute cocaine, a Schedule II

---

[1] During the commission of this offense, Defendant Welch and others are alleged to have caused the death of Michael Pimental by murder, as defined in 18 U.S.C. § 1111.

[2] During the commission of this offense, Defendant Welch and others are alleged to have discharged a firearm.

controlled substance, and cocaine base, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846 (Count 8); and knowingly possessing in and affecting interstate commerce a firearm; namely, a Taurus 1911 9mm pistol, while being an unlawful user of and addicted to a controlled substance as defined in 21 U.S.C. § 802, and knowing that he was an unlawful user of and addicted to such a substance, in violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(2) (Count 17).

The government is represented by Assistant United States Attorneys Wendy L. Fuller and John J. Boscia. Defendant Welch is represented by Robert S. Behrens, Esq. and Robert W. Katims, Esq.

I.  **Conclusions of Law and Analysis.**

A.  **Whether the Cell Phone Warrants Were Overbroad.**

Defendant Welch moves to suppress evidence obtained pursuant to state search warrants for records associated with cell phone numbers (603) 384-3916 (the "Verizon warrant") and (603) 384-3563 (the "AT&T warrant") for the crime of murder. (Doc. 514.) The affidavits supporting the cell phone warrants from Vermont State Police ("VSP") Detective Sergeant Ashley Barnes ("Det. Barnes") are substantially similar. In both instances, Vermont Superior Court Judge Robert Bent reviewed the search warrant applications and issued the cell phone warrants. Defendant Welch contends that the cell phone warrants were overbroad and "not based on sufficient probable cause[.]" *Id.* at 1.

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "A search warrant affidavit is presumed reliable." *United States v. Klump,* 536 F.3d 113, 119 (2d Cir. 2008) (citation omitted). An issuing judge must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates,* 462 U.S. 213, 238 (1983).

As Mr. Pimental's death occurred on or about October 13, 2018, Defendant Welch contends that the Verizon and AT&T warrants for data from April 1, 2018 to October 15,

2

2018 and November 21, 2018, respectively, are overly broad because "there is no evidence or information that [his] activities justify any search back" to that time period. (Doc. 514 at 7.) He asserts that "[i]n reviewing the affidavits, the events leading up to [Mr. Pimental's] death that are relevant started a few days before – October 11, 2018" because on "October 11, 2018, Krystal Whitcomb, Michael Hayes, Alicia Whitcomb and Brandon Darling purchased ammunition consistent with the ammunition that killed Mr. Pimental." *Id.*

The Warrants Clause of the Fourth Amendment prohibits overbreadth. U.S. Const. amend. IV. "[A] warrant is overbroad if its 'description of the objects to be seized . . . is broader than can be justified by the probable cause upon which the warrant is based.'" *United States v. Nejad*, 436 F. Supp. 3d 707, 725 (S.D.N.Y. 2020) (citation omitted) (alterations in original). When determining if a warrant is overbroad, a court must determine whether "there exists probable cause to support the breadth of the search that was authorized." *Id.* at 725 (quoting *United States v. Zemlyansky*, 945 F. Supp. 2d 438, 464 (S.D.N.Y. 2013)) (internal quotation marks omitted). "A failure to indicate a time frame could render a warrant constitutionally overbroad because it could allow[ ] the seizure of records dating back arbitrarily far and untethered to the scope of the affidavit which ostensibly provided probable cause." *United States v. Hernandez*, 2010 WL 26544, at *9 (S.D.N.Y. Jan. 6, 2010) (internal quotation marks omitted). However, unlike instances where no time frame is specified in the warrant, the cell phone warrants span a designated period of approximately six-months.[3]

The supporting affidavits for the cell phone warrants explain the connections that existed between Defendant Welch, Mr. Pimental, and members of the Whitcomb family well in advance of Mr. Pimental's death on or about October 13, 2018. For example, Defendant Welch informed law enforcement he used to associate with Mr. Pimental, including by purchasing heroin from him, three to four years ago. He stated that he had

---

[3] As the AT&T warrant was issued in November of 2018 and it requests data through the date of the warrant's execution, it spans a seven-month period.

3

worked with Shawn Whitcomb, who is alleged to have assisted with the murder, approximately six months prior to Mr. Pimental's death. The time frame set forth in the cell phone warrants covers not only the immediate dates surrounding the murder but a time period which reasonably reflects the relationships between the alleged participants and the planning of the crime. *See id.* at *11 (noting that the "complexity and duration of the alleged criminal activities" may render concerns over a warrant's time frame "less significant")

The supporting affidavits further aver that multiple individuals, who knew each other for significant periods of time, were involved in purchasing and distributing narcotics and that Mr. Pimental's murder arose out of some of these relationships. *See United States v. Ray*, 2021 WL 2134861, at *23 (S.D.N.Y. May 26, 2021) (finding search that was broader than the specific events identified in a supporting affidavit was permissible where those events "had probative value" such as providing support "for the theory that [defendant] was engaged in a criminal course of conduct" that extended over a longer time period). This is not a case in which the alleged drug conspiracy and the alleged murder were unrelated.

Because the cell phone warrants do not extend "arbitrarily far" and are not "untethered to the scope of the affidavit which ostensibly provided probable cause[,]" *Hernandez*, 2010 WL 26544, at *12 (internal quotation marks and citation omitted), it was reasonable for Judge Bent to believe that Defendant Welch's phone records would yield evidence of the crime of murder during a designated period that was not "broader than can be justified by the probable cause upon which the warrant is based." *Nejad*, 436 F. Supp. 3d at 725 (internal quotation marks and citations omitted). Defendant Welch's motion to suppress evidence obtained pursuant to the cell phone warrants based on overbreadth is therefore DENIED.

**B.     Whether the Cell Phone Warrants Were Based on Probable Cause.**

Defendant Welch asserts that the cell phone warrants were not based on probable cause because they fail to establish that his phone records were connected to a murder. "A reviewing court must accord substantial deference to the finding of an issuing judicial

4

officer that probable cause exists." *United States v. Wagner*, 989 F.2d 69, 72 (2d Cir. 1993) (citing *United States v. Nichols*, 912 F.2d 598, 602 (2d Cir. 1990); *United States v. Travisano*, 724 F.2d 341, 345 (2d Cir. 1983)). A warrant should be upheld if the issuing judicial officer had a "substantial basis" for finding probable cause. *Id.* (citing *Gates*, 462 U.S. at 236; *United States v. Nersesian*, 824 F.2d 1294, 1306 (2d Cir. 1987)). "[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Gates*, 462 U.S. at 232. "[P]robable cause only requires 'the probability, and not a prima facie showing, of criminal activity.'" *United States v. Martin*, 426 F.3d 83, 86 (2d Cir. 2005) (quoting *Gates*, 462 U.S. at 235).

The supporting affidavits for the Verizon and AT&T warrants are nearly identical with respect to Defendant Welch and, in sixty-two and one hundred paragraphs, respectively, they detail an extensive drug conspiracy in which one of the alleged participants was murdered. Krystal Whitcomb and Michael Pimental, who lived together in Waterford, Vermont, allegedly "were involved in selling heroin" from their residence. (Doc. 514-1 at 6, ¶ 3; Doc. 514-2 at 6, ¶ 3.) On October 13, 2018, Krystal Whitcomb was at the residence of Alicia Whitcomb, her sister, when she "received a phone call from [Mr.] Pimental[, who] . . . stated he would 'murder' her if she did not get home." (Doc. 514-1 at 7, ¶ 11; Doc. 514-2 at 7, ¶ 11.) Krystal Whitcomb reportedly notified her father, Shawn Whitcomb, "who agreed to meet her at a pull off down the road from her [Waterford] residence." (Doc. 514-1 at 7, ¶ 11; Doc. 514-2 at 7, ¶ 11.) Shortly thereafter, Mr. Pimental was murdered at the Waterford residence.

Both affidavits state that when Krystal Whitcomb was arrested, she was in possession of narcotics. She informed law enforcement that Defendant Welch, who was a friend of Shawn Whitcomb, shot Mr. Pimental. While she provided varying accounts of the incident, Krystal Whitcomb described a male identified as Defendant Welch, "entering the residence and shooting [Mr.] Pimental in the bedroom[,]" which she watched "through the window from outside the residence." (Doc. 514-1 at 8, ¶ 12; Doc. 514-2 at 7, ¶ 12.) She later stated that as Defendant Welch "walked to the bedroom where

[Mr.] Pimental had been[,]" she "stepped outside on to the porch and heard approximately three (3) gunshots with a pause and then multiple more gun shots." (Doc. 514-1 at 8, ¶ 12; Doc. 514-2 at 7, ¶ 12.) She informed law enforcement in her "final version" that Shawn Whitcomb was present in the bedroom where Mr. Pimental was killed and that after "[Defendant] Welch shot first[,]" Shawn Whitcomb took Mr. Pimental's firearm and "empt[ied] the weapon into him." (Doc. 514-1 at 8, ¶ 13; Doc. 514-2 at 7, ¶ 13.) Brandon Darling, Alicia Whitcomb's domestic partner, informed law enforcement that Defendant Welch admitted to shooting Mr. Pimental.

When questioned, Defendant Welch provided law enforcement with inconsistent accounts regarding his whereabouts at the time of Mr. Pimental's murder. He acknowledged he "used to associate with [Mr.] Pimental," including by purchasing heroin from him "when he was using" three to four years ago. (Doc. 514-1 at 12, ¶ 44; Doc. 514-2 at 11, ¶ 48.) Defendant Welch's girlfriend, Angela Crowley, informed law enforcement that on the date of Mr. Pimental's murder, she and Defendant Welch traveled to Alicia Whitcomb's residence to purchase cocaine and that Defendant Welch left the residence with Krystal Whitcomb. Defendant Welch returned in approximately one hour, and Ms. Crowley believed he may have been in possession of his cell phone when he traveled to and from Alicia Whitcomb's residence.

Defendant Welch informed law enforcement that Shawn Whitcomb worked for him most recently approximately six months before Mr. Pimental's death. He stated that he visited Shawn Whitcomb in person on either October 9, 2018 or October 10, 2018. A witness, Dallas Bona, informed law enforcement that Shawn Whitcomb explained to him how an individual named "John C" shot Mr. Pimental before leaving the Waterford residence with Krystal Whitcomb. (Doc. 514-1 at 13, ¶ 50; Doc. 514-2 at 13, ¶ 61.) Defendant Welch admitted that he called Shawn Whitcomb the day after Mr. Pimental was killed, although he claimed the conversation was related to tires for his truck. He also told law enforcement that his cell phone broke two days after Mr. Pimental's death.

The Verizon warrant affidavit states that "investigators learned John Welch has Verizon Wireless phone number of 603-348-3916." (Doc. 514-1 at 14, ¶ 59.) The AT&T

6

warrant affidavit provides additional details including that Brandon Darling informed law enforcement that he received a text message from Defendant Welch at some point after Defendant Welch confessed to the murder, and Mr. Darling identified the number (603) 348-3563 as belonging to Defendant Welch.

Both affidavits provide ample grounds to reasonably believe that the cell phone records in question may provide evidence related to Mr. Pimental's murder in light of the numerous witnesses who provided information to law enforcement, their pre-existing relationships, and their consistent identification of a group of participants including Defendant Welch and his co-Defendants Krystal Whitcomb, Alicia Whitcomb, Shawn Whitcomb, Michael Hayes, Brandon Darling, and Christopher Eastman, all of whom are alleged to have information pertaining to the crime. The cell phone records were likely to corroborate the existence of these relationships and reveal information regarding the role of the various participants in an alleged drug conspiracy that involved Mr. Pimental and culminated in his murder. *See United States v. Johnson*, 804 Fed. App'x. 8, 10-11 (2d Cir. 2020) (finding cell-site location information associated with cell phone was properly obtained "pursuant to a facially valid judicial warrant supported by probable cause" where the investigator's application "included a detailed factual recitation" regarding a "drug conspiracy surrounding the [v]ictims' murders" and the defendant's pattern of travel at the time of the murders); *see also United States v. Saipov*, 2019 WL 3024598, at *4 (S.D.N.Y. July 11, 2019) (noting that a defendant "keep[ing] the [cellular phones at issue] close to him while he committed the charged crimes" supported probable cause).

Judge Bent had a "substantial basis" for his conclusion that probable cause existed to search Defendant Welch's cell phone records for a period of time spanning approximately six months for evidence of murder because there was a fair probability that these records would reveal evidence of that crime. *Gates,* 462 U.S. at 238. Defendant Welch's motion to suppress evidence obtained pursuant to the cell phone warrants for a lack of probable cause (Doc. 514) is therefore DENIED.

### C. Whether Defendant Welch Has Established "Standing" to Challenge the Facebook Warrant.

Defendant Welch moves to suppress evidence obtained pursuant to the Facebook warrant for evidence of the crime of murder (Doc. 287) arguing that it was not based on probable cause because the supporting affidavit "did not present a fair probability that [his] Facebook account contained evidence related to the death/murder of Mr. Pimental." *Id.* at 4. He claims that the warrant lacks particularity and is overbroad because it requests data from April 1, 2018 to the warrant's execution and it "essentially seeks all data in the account." *Id.* at 6. The Facebook warrant authorizes the search of the following records related to the welch.john.10 Facebook account:

> User Identification Number[;] E-mail address[;] Date and Time Stamp of account creation date[;] Most Recent Account Logins[;] IP Addresses with Port Numbers associated with Login/Logout connection history[;] Registered Mobile Number[;] User Profile Contact Section Information[;] User Profile Wall Postings Section Information (DATE RANGE: 04/01/18 – Present)[;] Private Messages with message headers (DATE RANGE: 04/01/08 – Present)[;] Stored content including photos, videos, and location information [i]including, but not limited to, NEOPRINT and PHOTOPRINT[.]

(Doc. 287-1 at 2.)

The supporting affidavit for the Facebook warrant is substantially similar to those accompanying the cell phone warrants, although it contains additional information specific to Defendant Welch's activity on Facebook. In particular, it states that on October 22, 2018, law enforcement officers met with Marisa Levesque, who informed them she had known Angela Crowley, Defendant Welch's girlfriend, since she was twelve years old, but that she had only recently become acquainted with Defendant Welch. "[Ms.] Levesque explained that [Defendant] Welch had been romantically involved with [a person named Alisha Wedge] while being in a romantic relationship with [Ms.] Crowley. [Ms.] Levesque advised she was a 'middle man' for conversations between [Ms.] Wedge and [Defendant] Welch on Facebook messenger." *Id.* at 12-13, ¶ 72.

8

On October 12, 2018, Marisa Levesque traveled with Defendant Welch and Angela Crowley to the residence of Alicia Whitcomb and Brandon Darling. Defendant Welch entered the residence to purchase cocaine while she stayed in the vehicle with Ms. Crowley. When Defendant Welch returned to the vehicle approximately forty-five minutes later, he was bare-chested and carrying his sweatshirt, which Ms. Levesque believed had been removed "to show he was not wearing a wire during the purchase of cocaine." *Id.* at 13, ¶ 73. Ms. Levesque stated that "she received Facebook messages from [Defendant] Welch since October 12, 2018, about getting a ride and that people had been saying 'crazy stuff[.]'" *Id.* at 13, ¶ 75. During the murder investigation, it was determined that a "Facebook account for 'Welch John' (welch.john.10) exists." *Id.* at 14, ¶ 81.

As a preliminary matter, the government argues that Defendant Welch's motion to suppress the Facebook warrant must be denied because he has not answered the "threshold question of whether [he] even had a reasonable expectation of privacy in the Facebook account[] and what the extent of that expectation was." (Doc. 339 at 62.) A defendant who moves to suppress evidence for failure to satisfy the Fourth Amendment bears the burden of establishing that he or she "had a legitimate expectation of privacy" in the location or property searched. *Rawlings v. Kentucky*, 448 U.S. 98, 104 (1980). Because of the nature of Facebook, courts have determined that "whether the Fourth Amendment applies to a user's Facebook content 'depends, *inter alia*, on the user's privacy settings.'" *United States v. Westley*, 2018 WL 3448161, at *6 (D. Conn. July 17, 2018) (quoting *United States v. Meregildo*, 883 F. Supp. 2d 523, 525 (S.D.N.Y. 2012)).

A defendant's burden of establishing standing "'is met only by sworn evidence, in the form of an affidavit or testimony, from the defendant or someone with personal knowledge.'" *United States v. White*, 2018 WL 4103490, at *8 (S.D.N.Y. Aug. 28, 2018) (quoting *United States v. Montoya-Eschevarria*, 892 F. Supp. 104, 106 (S.D.N.Y. 1995)); *see also United States v. Bedell*, 311 Fed. App'x. 461, 463 (2d Cir. 2009) (suppression not appropriate where defendant provided "scant evidence" to support the inference of a reasonable expectation of privacy). "An attorney's declaration" is typically "insufficient" to sustain this burden. *White*, 2018 WL 4103490, at *8.

9

Defendant Welch has not "provided affidavits or any other facts concerning the privacy settings on [his] Facebook account[] or any steps [he] took to keep [his] Facebook content private. And it is not otherwise apparent from the record what, if any, privacy settings applied to [his] account[]." *Westley*, 2018 WL 3448161, at *6 (footnote omitted). To the contrary, his counsel conceded that the privacy settings on Defendant Welch's Facebook account at the time of the Facebook warrant were unknown and remain unknown. Against this backdrop, Defendant Welch has failed to establish that the information sought pursuant to the Facebook warrant was not publicly available. This omission is fatal to Defendant Welch's motion to suppress because he cannot establish standing. *See id.* at *6, n.4 ("Defendants have not pointed out, however, what, if any, such information [from a Facebook warrant] was seized in this case. Nor have they provided the Court with any statements from which it could determine that they had a reasonable expectation of privacy in that information.").

Because Defendant Welch has "not submitted any information regarding steps [he] took to keep [his] Facebook content private, [he] ha[s] not met [his] burden to demonstrate that [he] had a reasonable expectation of privacy in any of the information searched. [His] motion[] fail[s] on this ground alone." *Id.* at *7 (footnote omitted); *see also White*, 2018 WL 4103490, at *8 (finding defendant "failed to establish standing as required to bring this motion to suppress because neither he nor a person with personal knowledge has demonstrated by sworn evidence that [defendant] had any property or possessory interest in the Facebook account."). Defendant Welch's motion to suppress must therefore be DENIED.

Even if Defendant Welch could establish standing, his probable cause challenge to the Facebook warrant would fail because there was a "substantial basis" to believe that the warrant would yield evidence of the crime of murder. *Gates*, 462 U.S. at 238. Marisa Levesque told law enforcement that Defendant Welch used her as a "middle man" for conversations that took place over Facebook Messenger and that Defendant Welch messaged her about individuals saying "crazy stuff" around the time of the murder. (Doc. 287-1 at 13, ¶¶ 72, 75) (internal quotation marks omitted). Evidence of these

10

conversations on Defendant Welch's Facebook page may reveal evidence not only of Mr. Pimental's murder, but may also demonstrate the relationships between the various alleged participants in that crime. *See Ray*, 2021 WL 2134861, at *23 (ruling that search broader than particular events noted in affidavit was permissible where the events supported defendant's engagement in a criminal course of conduct over a longer period). Even where no time frame is alleged in the case of search warrants for social media accounts, courts have found that "while the warrants may have violated the particularity requirement, whether they did is not an open and shut matter; it is a close enough question that the warrants were not 'so facially deficient' that the FBI agents who executed them could not have reasonably believed them to be valid." *United States v. Blake*, 868 F.3d 960, 975 (11th Cir. 2017).

In the context of Facebook searches, "'courts in this circuit repeatedly have recognized that . . . avoiding the intrusiveness of a search while maintaining its efficacy is largely infeasible.'" *United States v. Liburd*, 2018 WL 2709199, at *3 (E.D.N.Y June 5, 2018) (quoting *United States v. Pugh*, 2015 WL 9450598, at *27 (E.D.N.Y. Dec. 21, 2015)). Once probable cause is established, permissible searches have included "the entire contents" of a defendant's Facebook account" even if "the account also contained information unrelated to criminal activity." *Id.; see also United States v. Elkorany*, 2021 WL 3668086, at *4 (S.D.N.Y. Aug. 17, 2021) (rejecting challenge to a Facebook search warrant which "did not limit Facebook's production to a certain time frame" in light of defendant's pattern of criminal conduct spanning a number of years); *United States v. Galpin*, 720 F.3d 436, 451 (2d Cir. 2013) (observing that the Second Circuit has "not required specific search protocols or minimization undertakings as basic predicates for upholding digital search warrants").

For the foregoing reasons, Defendant Welch's motion to suppress evidence obtained pursuant to the Facebook warrant (Doc. 287) for overbreadth, lack of particularity, and lack of probable cause is DENIED.

### D. The Good Faith Exception.

Even if the court found that the cell phone or Facebook warrants were deficient, suppression would not be warranted where, as here, law enforcement relied upon the warrants in good faith. *See Hernandez,* 2010 WL 26544, at *12 (finding that even if the court were to "determine that the search warrants . . . w[ere] constitutionally overbroad or insufficiently particular, [the court] would [nevertheless] . . . conclude that the search is protected by the 'good faith' exception") (citation omitted).

"[S]uppression is 'our last resort, not our first impulse' in dealing with violations of the Fourth Amendment." *United States v. Clark,* 638 F.3d 89, 99 (2d Cir. 2011) (quoting *Herring v. United States,* 555 U.S. 135, 140 (2009)). Accordingly, "the exclusionary rule barring illegally obtained evidence from the courtroom does not apply to evidence seized 'in objectively reasonable reliance on' a warrant issued by a detached and neutral . . . judge, even where the warrant is subsequently deemed invalid." *United States v. Falso,* 544 F.3d 110, 125 (2d Cir. 2008) (quoting *United States v. Leon,* 468 U.S. 897, 922 (1984)).

The exclusionary rule deters "deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence." *Herring,* 555 U.S. at 144. "To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Id.* The good faith exception to the exclusionary rule does not apply in the following circumstances:

> (1) where the issuing magistrate has been knowingly misled; (2) where the issuing magistrate wholly abandoned his or her judicial role; (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; and (4) where the warrant is so facially deficient that reliance upon it is unreasonable.

*Clark,* 638 F.3d at 100 (quoting *United States v. Moore,* 968 F.2d 216, 222 (2d Cir. 1992)).

Courts in the Second Circuit have applied the good faith exception in cases involving cell phone and Facebook warrants that authorized searches into broad

12

categories of evidence. *See, e.g., United States v. Stacy*, 802 Fed. App'x. 611, 614 (2d Cir. 2020) (applying good faith exception to cell phone warrant despite the fact it was insufficiently particular in terms of the evidence to be seized); *Hernandez*, 2010 WL 26544, at *12 (finding that "although the search warrant included fairly broad categories and lacked any express time frame limitation, it is by no means 'so facially deficient' as to render reliance [on it] unreasonable"); *United States v. Shipp*, 392 F. Supp. 3d 300, 312 (E.D.N.Y. 2019) (applying good faith exception to Facebook warrant despite overbreadth and particularity concerns); *Westley*, 2018 WL 3448161, at *17 (same). The good faith exception would be applicable here because law enforcement acted in objectively reasonable reliance on the search warrants in seeking evidence of Mr. Pimental's murder in Defendant Welch's cell phone records and Facebook account. Any potential deficiencies in the search warrants do not warrant the "last resort" of suppression. *See Herring*, 555 U.S. at 140.

## CONCLUSION

For the foregoing reasons, the court DENIES Defendant Welch's motions to suppress. (Docs. 287 & 514.)

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 5th day of November, 2021.

Christina Reiss, District Judge
United States District Court

13